FILED 30 AUG '11 15:38 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **MITCHELL SAWYER,** | |
| Plaintiff, | Civil No. 10-317-TC |
| v. | **FINDINGS AND RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | |
| Defendant. | |

COFFIN, Magistrate Judge:

Plaintiff Mitchell Sawyer ("Sawyer") seeks judicial review of the Social Security Commissioner's final decision partially denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons that follow, the

1 - FINDINGS AND RECOMMENDATION

Commissioner's decision should be reversed and remanded for further proceedings.

## BACKGROUND

Born in 1961 (Tr. 61)[1], Sawyer reports a twelfth-grade education. Tr. 84, 104. He alleges disability due to left leg fractures sustained in a motor vehicle accident on March 9, 2002. Tr. 88, 98. The Commissioner denied his applications initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on October 4, 2004. Tr. 593-648. The ALJ found Sawyer not disabled on February 19, 2005. Tr. 16-30. Sawyer appealed that decision to this court, and this court affirmed the ALJ's decision. Sawyer v. Barnhart, No. 05-1590 (D. Or. Nov. 28, 2006).

Sawyer subsequently appealed to the Ninth Circuit Court of Appeals, which remanded the matter for further proceedings. Tr. 670-72. The ALJ held a second hearing on July 29, 2009 (Tr. 1348-1393), and subsequently found Sawyer disabled between March 9, 2002, and March 31, 2006. Tr. 1398-1410. Sawyer now challenges the ALJ's finding that he was not disabled after March 31, 2006.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer November 12, 2010 (Docket #14).

impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. Id.

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); Yuckert, 482 U.S. at 141-2; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566; 404.1520(g); 416.966; 416.920(g).

3 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS

The ALJ's November 29, 2009, opinion first consolidated Sawyer's August 2002 and January 30, 2007, disability applications. Tr. 1398. The ALJ found Sawyer's "status-post leg fracture with multiple surgeries and onset of residual arthritis," depression, and anxiety "severe" at step two in the sequential proceedings. Tr. 1401. The ALJ found that these impairments did not meet or equal the Commissioner's listings at step three. Tr. 1405. The ALJ found that Sawyer had the RFC to perform less than a full range of sedentary work between March 9, 2002, and March 9, 2006 (Tr. 1406), and found Sawyer disabled during this period. Tr. 1408.

However, the ALJ found that Sawyer experienced medical improvement as of March 10, 2006. Tr. 1409. Here the ALJ found that Sawyer could perform a full range of sedentary work, with a minimal nonexertional limitation. Id. The ALJ found that this RFC allowed Sawyer to perform work in the national economy, and therefore not disabled after March 9, 2006. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715,

4 - FINDINGS AND RECOMMENDATION

720 (9th Cir. 1998). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006), see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id., see also Batson, 359 F.3d at 1193.

## DISCUSSION

### I.   Ninth Circuit Remand Order

Sawyer contends that the ALJ failed to follow remand instructions issued by the Ninth Circuit Court of Appeals on December 6, 2008. Pl.'s Opening Br. 6. The Commissioner does not answer this assertion. The Ninth Circuit ordered the ALJ to address the opinions of Disability Determination Services ("DDS")[2] reviewing medical source statements of Cathy Salinas and J. Scott Pritchard, M.D., regarding Sawyer's ability to perform "light" work under the Commissioner's regulations. Tr. 671. The remand order did not refer to other evidence, or instruct the ALJ to perform a broader review of the record. Tr. 670-72.

Sawyer presently fails to either cite these opinions or explain the manner in which the ALJ erred. Pl.'s Opening Br. 6. This court's review of the four-volume 1,410 page record finds no reference to Cathy Salinas. J. Scott Pritchard, D.O., reviewed Sawyer's file on May 7, 2003, and limited Sawyer to occasionally lifting ten pounds, frequently lifting less than ten pounds, standing and walking two hours in an eight-hour workday, and sitting six hours in a workday. Tr. 522-31.

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503; 416.903.

5 - FINDINGS AND RECOMMENDATION

Such limitations are consistent with sedentary work under the Commissioner's regulations. 20 C.F.R. §§ 404. 404.1567(a); 416.967(a). These limitations are therefore consistent with the ALJ's limitation to sedentary work. Sawyer does not establish reversible error regarding any omission of Dr. Pritchard's opinion.

Further, the ALJ discussed DDS reviewing medical source opinions and gave them "little weight" because "other medical opinions are more consistent with the record as a whole." Tr. 1407. Here the ALJ cited the longitudinal opinion of treating physician Heather Paladine, M.D. Id. The ALJ generally must give greater weight to the opinion of a treating physician than that of a reviewing physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), but the ALJ may reject a physician opinion that is brief, conclusory, or unsupported by clinical notes. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). The record confirms that primary care physician Dr. Paladine intermittently treated Sawyer at Oregon Health Sciences University between October 4, 2003, and February 2, 2006, and that her opinion is accompanied by treatment notes showing clinical observations. Tr. 533-50; 841-50; 933-35; 938-45; 949-71; 973. The ALJ's reliance upon Dr. Paladine's opinion, rather than that of DDS medical sources, should therefore be sustained for this reason also.

Sawyer now contends that the Ninth Circuit order encompasses the opinions of psychologists Joni Moon, Psy.D., and Jill Spendal, Psy.D. Pl.'s Opening Br. 8-11. The Ninth Circuit Order addresses the opinions of Salinas and Dr. Pritchard only, and does not refer to additional evidence. Tr. 670-72. This argument fails.

**II.    Credibility**

Sawyer challenges the ALJ's credibility finding, asserting that the ALJ erred regarding his testimony addressing his physical limitations and methadone side effects. Pl.'s Opening Br. 11-13. Sawyer does not explain the manner in which the ALJ erred, or assert that crediting this testimony would establish a finding of disability. Id.

### A. Standards: Credibility

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036, (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2005).

### B. Credibility Analysis

Sawyer argues that the ALJ "did not address" his complaints. Pl.'s Opening Br. 13. The Commissioner replies that the ALJ found Sawyer credible. Def.'s Br. 12.

Although the ALJ made no discretely identifiable credibility analysis, he twice discussed Sawyer's credibility. First, the ALJ credited Sawyer's testimony that he must elevate his left leg during the period between March 9, 2002, and March 9, 2006. Tr. 1405. The ALJ also found Sawyer's testimony pertaining to this period "generally credible." Tr. 1406. Second, the ALJ found Sawyer's testimony credible regarding his "improvement in physical or mental limitations to the point where he could perform at or greater than the full range of sedentary" work. Tr. 1407.

Sawyer testified at his July 29, 2009, hearing that he has been in pain since a car hit him and fractured his left leg in March 2002, and that he currently takes 180 milligrams of methadone. Tr. 1365. He stated that he elevates his leg when sitting (Tr. 1366), and that he could not sit in a chair for eight hours per day. Tr. 1367-68. He also stated that he could not stand throughout an eight-hour workday. Tr. 1369. Sawyer testified that he could walk a "couple miles," but, upon questioning, stated that he can only walk a half block without resting. Tr. 1370. Finally, Sawyer testified that he can lift ten or fifteen pounds, but could not do this for one-third of a workday. Tr. 1371. Regarding his methadone, Sawyer stated that the medication makes it "hard to think through it." Tr. 1379.

The ALJ found that, as of March 10, 2006, Sawyer could perform sedentary work with a "minimal" nonexertional limitation. Tr. 1409. An individual is limited to sedentary work under the Commissioner's regulations if he can lift no more than ten pounds. 20 C.F.R. §§ 404.1567(a); 416.967(a). Because Sawyer testified that he may lift ten or fifteen pounds, his testimony does not establish an additional limitation regarding sedentary work. Sawyer's claim that the ALJ failed to

8 - FINDINGS AND RECOMMENDATION

credit this testimony therefore fails.

However, Sawyer also testified that his methadone treatment causes him unspecified difficulty thinking. Tr. 1379. The ALJ's RFC as of March 10, 2006, allowed Sawyer a "minimal" nonexertional limitation, but the ALJ did not explain this finding. This court therefore cannot determine whether this RFC assessment encompasses Sawyer's testimony regarding his methadone side effects. The ALJ's credibility findings on this matter are unclear. The effects of this error are discussed below on page 15.

In summary, while the ALJ credited Sawyer's testimony pertaining to the period during which he found Sawyer disabled, the ALJ failed to make a clearly identifiable credibility finding addressing all of Sawyer's symptom testimony after March 9, 2006. This court cannot now construe such findings.

## II.  Medical Source Statements

Sawyer contends that the ALJ erroneously failed to address a psychological evaluation conducted by Dr. Spendal in April and May 2007, and mental health treatment notes submitted by psychologist Dr. Moon for the period between December 2006, and July 2009. Pl.'s Opening Br. 6-11. The ALJ did not address either opinion, and the Commissioner now contends that both are irrelevant because they were construed after the March 9, 2006, date that the ALJ found Sawyer no longer disabled. Def.'s Br. 12. The ALJ consolidated Sawyer's January 30, 2007, disability applications into his decision presently under review. Tr. 1398. The evidence pertaining to the period after March 9, 2006, is relevant and probative to the ALJ's adjudication of Sawyer's 2007 disability application.

### A.  Examining Psychologist Dr. Spendal

Dr. Spendal evaluated Sawyer for the Oregon Department of Human Services in April and May 2007. Tr. 1012-1032.

Dr. Spendal conducted a clinical interview and testing, and concluded that Sawyer carried diagnoses of dysthymic disorder, obsessive-compulsive disorder, posttraumatic stress disorder, panic disorder without agorophobia, and avoidant personality disorder with schizotypal features. Tr. 1027. Dr. Spendal assessed numerous work-related limitations, stating that Sawyer requires significant workplace counseling and support. Tr. 1030-31.

The ALJ did not address Dr. Spendal's report, and the Commissioner fails to address Dr. Spendal's opinion. Def.'s Br. 12. An ALJ's omission can be considered harmless only when the ALJ's decision remains legally valid despite the error. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). Here, the ALJ omitted Dr. Spendal's opinion, and Dr. Spendal's opinion states that Sawyer cannot function in a workplace. Tr. 1030-31. Such omission is not harmless, and should not be sustained. The effect of this error is discussed below. Supra, 15.

### B.  Treating Psychologist Dr. Moon

Dr. Moon treated Sawyer on a weekly or biweekly basis between December 2006 and July 17, 2009. Tr. 1033-49; 1291-1347. During each of these visits she completed a handwritten report, noting Sawyer's subjective complaints. Id. She also noted Sawyer's observable behaviors at each visit, and made a Global Assessment of Functioning ("GAF")[3] assessment at each visit. Id. Dr.

---

[3]The GAF scale is used to report a clinician's judgment of the patient's overall psychological, social and occupational functioning on a scale of 1 to 100. It does not include impairment in functioning due to physical or environmental limitations. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed., Text Revision, 2002)("DSM"), 34. A GAF score of 61-70 indicates "some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g.

Moon assigned Sawyer GAF scores between 50 and 65 for most of the period during which she treated Sawyer, and assessed GAF scores between 45 and 48 for the period between November 8, 2007, and March 20, 2008, only. Tr. 1323-1334. Dr. Moon made no independent diagnoses.

On July 24, 2009, Dr. Moon completed a form for Sawyer's counsel. Tr. 1052-55. Dr. Moon noted that she had treated Sawyer weekly or biweekly since 2006, and that his current diagnoses were depression and post-traumatic stress disorder. Tr. 1052. She also stated that Sawyer has "compulsive tendencies." Id. In response to specific questioning, Dr. Moon endorsed that Sawyer has an anxiety disorder (Tr. 1053), which limits his ability to be in public. Tr. 1054. She also stated that in her professional judgment, Sawyer had "marked" limitations in concentration, persistence, and pace, and that he has difficulty with social interactions. Tr 1054. Dr. Moon endorsed "extreme" limitations in Sawyer's activities of daily living, and stated that he has periods when he is unable to leave his home due to anxiety, has difficulty communicating effectively, and is easily overwhelmed. Tr. 1054-55. Finally, she wrote that Sawyer would miss more than two days of work per month from a simple, routine, and sedentary job. Tr. 1055.

The ALJ failed to discuss Dr. Moon's treatment notes, and the Commissioner again fails to address evidence the ALJ did not discuss. Dr. Moon's opinion, particularly as expressed in the July 24, 2009, form submitted to Sawyer's counsel points to a different disability determination for the period under review. However, the court notes that Dr. Moon's treatments notes, especially her GAF assessments, do not support the "extreme" limitations expressed in her July 2009 opinion. The

---

few friends, conflicts with peers or coworkers)." A GAF score between 41 and 50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Id. (emphasis original).

effects of the ALJ's omission of Dr. Moon's opinion are discussed below on page 15.

In summary, the ALJ failed to discuss the opinions of Drs. Spendal and Moon. Because these opinions would support a finding of disability, the ALJ's omissions cannot be construed as harmless, and should not be sustained.

### III. Lay Witness Testimony

Sawyer asserts that the ALJ ignored testimony submitted by his father, Donald Sawyer, and that this omission is "clear error." Pl.'s Opening Br. 14. Sawyer does not explain the effects of this omission upon the ALJ's findings. Id.

#### A. Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d), 416.945(a)(3); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting his testimony. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This court may not find an ALJ's silent omission of lay testimony harmless unless it can "confidently conclude" that no reasonable ALJ, when fully crediting such testimony, would reach a different disability determination. Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

#### B. Analysis

Sawyer's parents, Donald and Patsy Sawyer, completed a third-party statement on September 27, 2002. Tr. 130. They stated that they saw Sawyer twice a month or more (Tr. 119), and that

Sawyer grocery shops three times per week, visits friends twice a week, and leaves the house three or four times per week. Tr. 121. Sawyer uses public transportation (Tr. 122), and, as of September 2002, he could walk one mile once per week and could not perform any other exercise. Tr. 123. Sawyer's parents did not indicate limitations in Sawyer's self care (Tr. 126), but stated that he can only cook simple meals due to his limited mobility. Tr. 125. Finally, Sawyer's parents wrote that Sawyer stays in his rooming house due to his leg injury, leaving only to go to the store or attend physical therapy. Tr. 129.

Donald Sawyer also submitted a statement to the record on August 5, 2009. Tr. 819-20. He wrote that he sees Sawyer four or five times per year, and that Sawyer has had a mental health "problem" since he was a teenager. Tr. 819. Donald Sawyer explained that Sawyer has a hard time comprehending instructions, and becomes angry in response to criticism. Id. He also stated that Sawyer has left leg pain "all the time" and can no longer ride his mountain bike or sit still "for more than five minutes, either because of the pain, itching, and tingling in the leg." Tr. 819. Finally, Donald Sawyer stated that Sawyer must take breaks during a five or six hour drive to change position, and puts his feet up when he is home. Tr. 819-20.

The ALJ's decision made no reference to third party testimony. This court cannot sustain silent omission of lay testimony unless it can confidently conclude that no reasonable ALJ, when fully crediting that testimony, would reach a different disability determination. Stout, 454 F.3d at 1055-56. The September 27, 2002, statement submitted by Donald and Patsy Sawyer states that Sawyer cannot walk more than a mile, and cannot stand to cook complex meals. Tr. 123, 125. It does not establish further physical or nonexertional limitations inconsistent with the ALJ's finding

that Sawyer could perform sedentary work after March 9, 2006. For this reason, the ALJ's omission of their testimony is harmless and does not warrant reversal.

Donald Sawyer's second statement was made after Sawyer's July 29, 2009, hearing, on August 5, 2009. Id. The record does not indicate when the ALJ received this statement, showing only that Sawyer's counsel received it on August 5, 2009. Id. This court cannot determine whether the ALJ had an opportunity to review this statement, and will not chastise an ALJ for failing to review evidence not before him. However, because the matter must be remanded for further proceedings to address Sawyer's testimony and the opinions of Drs. Spendal and Moon, the ALJ should also properly evaluate Donald Sawyer's July 29, 2009, statement upon remand.

## V.     Remand

The ALJ erroneously evaluated Sawyer's testimony pertaining to the side effects of his methadone use, and improperly omitted the opinions of Drs. Spendal and Moon. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000.) (cert. denied, 531 U.S. 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. Id. at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett, 340 F.3d at 876 (citing Bunnell, 947 F.2d at 348).

Here, the ALJ failed to properly evaluate Sawyer's testimony regarding his methadone use side effects, and the opinions of psychologists Drs. Spendal and Moon. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards. It is not clear from the record, however, that crediting the omitted evidence establishes that Sawyer is disabled at step five in the sequential proceedings. Sawyer's counsel did not elicit testimony from the vocational expert addressing his difficulty thinking relating to his methadone use. Tr. 1392. Furthermore, while the vocational expert stated that an individual who was "argumentative and could not interact at a least a below average level with . . . others" would probably be disciplined in the workplace, and would likely be terminated if no improvement occurred (Tr. 1391), the vocational expert was not asked to address the limitations expressed in Dr. Spendal's May 2007 report. It is also unclear that the opinions of Drs. Spendal and Moon are properly supported and control disposition of Sawyer's limitations pertaining to his alleged mental impairments.

15 - FINDINGS AND RECOMMENDATION

In such instances, award of benefits is inappropriate. Harman, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly evaluated evidence discussed above. Id. The ALJ must then make clearly identifiable credibility and RFC findings pertaining to the period after March 9, 2006. The ALJ must then apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Sawyer's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## CONCLUSION

For these reasons, this court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with these Findings and Recommendations. The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

Dated this 30th day of August, 2011.

Thomas M. Coffin
United States Magistrate Judge